UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIMOTHY W.,

Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 1:20-cv-01545-TPK

OPINION AND ORDER

## OPINION AND ORDER

       Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on August 31, 2020, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 10), and the Commissioner has filed a similar motion (Doc. 11).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

## I.  BACKGROUND

       On October 13, 2016, Plaintiff protectively filed his application for benefits, alleging that he became disabled that day.  After initial administrative denials of his application, Plaintiff was given a hearing before an administrative law judge on March 28, 2019.  Both Plaintiff and a vocational expert, Timothy P. Janikowski, testified at the hearing.

       The Administrative Law Judge issued an unfavorable decision on August 15, 2019.  In that decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  He then found that Plaintiff suffered from severe impairments including major depressive disorder, anxiety disorder, learning disorder, and lumbar degenerative disc disease.  He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

       Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of light work.  He could climb ramps and stairs occasionally and could never climb ladders, ropes, or scaffolds.  Additionally, Plaintiff could balance and stoop only occasionally and could not kneel, crouch, or crawl.  He was limited to frequent bilateral reaching and could work only in environments without excessive vibration and

without exposure to hazards such as unprotected heights and moving machinery. From a mental standpoint, Plaintiff could understand simple information and perform simple, routine tasks that could be learned after a short demonstration or within thirty days. Also, he needed to be off task up to five percent of the workday in addition to normal work breaks and could make only simple work-related decisions. He could not do a job which required reading as a job function and could have no more than occasional interaction with co-workers, and he was limited to superficial interaction with the public. Finally, he could not engage in teamwork and needed to do the same task every day with little variation in location, hours, or tasks.

The ALJ next determined that Plaintiff could not do his past relevant work as a school bus monitor. He found, however, that even with his limitations, Plaintiff could perform jobs like folder, small products assembler, and inspector, and the ALJ determined that these jobs existed in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, raises three issues. He contends (1) that the ALJ erred by rejecting the opinion of Plaintiff's treating nurse practitioner; (2) that the ALJ erred by rejecting every opinion which addressed Plaintiff's physical residual functional capacity; and (3) that the evidence from Evergreen Health Services was improperly rejected by the Appeals Council as not relating to the time period at issue.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

At the administrative hearing, Plaintiff first testified that he had a high school education but was in special education classes. He was currently residing alternately with his mother and his aunt. He stopped working about three years before the hearing, and his longest job was as a school bus aide. He had also worked as a maintenance man for a company that installed windshields.

Plaintiff said that he was being seen at Horizon for counseling for severe anxiety and depression. He also took medication for those conditions. He described symptoms including panic attacks and lack of energy as well as side effects from his medications. They did help with his sleep but did not improve his anxiety. Plaintiff said he had tension in his back from the anxiety and took muscle relaxants, and he had also done physical therapy. His doctor had diagnosed two herniated discs.

In a typical day, Plaintiff said that he would get up fairly late in the morning and would do crafts, watch television, and nap during the day. He was able to prepare TV dinners and do some laundry or dishes. He was also able to drive himself to appointments. A friend might visit him every other week but he did little else in the way of socializing. Plaintiff reported problems with concentration and with reading. He was able to stand for about an hour, could walk short distances, and did no heavy lifting. His major problem, he said, was his inability to handle stress

and the need to deal with his depression and anxiety.

The vocational expert, Dr. Janikowski, first characterized Plaintiff's past work as a school bus aide as light and unskilled. He was then asked questions about a person who was limited to light work with numerous postural, environmental, and psychological limitations. He said that such a person could not do Plaintiff's past relevant work because of the amount of interaction needed with the children, but the person could be employed as a cleaner, folder, or palletizer. Those jobs could also be done by someone who had some reaching limitations, but not by someone who would be off task for 20% of the time or who would miss two days of work per month.

Subsequent to the hearing, the ALJ noted a potential conflict between the vocational expert's testimony and the Dictionary of Occupational Titles, and he therefore submitted a set of interrogatories to Dr. Janikowski. In response, the expert identified the jobs of small products assembler and folder as jobs that the person described at the hearing could perform, as opposed to the jobs of cleaner and palletizer.

## B.  Medical Records

The relevant medical records can be summarized as follows. An x-ray taken of Plaintiff's lumbar spine in 2016 showed decreased disc height throughout as well as posterior spondylosis in the lower lumbar spine. That study was done following Plaintiff's complaint of increased low back pain in the summer of that year which was made worse by physical therapy. His range of motion in the low back was normal but he had tenderness over the paraspinal musculature and the S1 joint. An MRI showed disc bulges at two levels.

Other treatment notes from 2016 show that Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder following a referral to Horizon Corporations from his primary care physician. He reported depression occurring every day as well as excessive sleeping and difficulty with concentrating. He also had anxiety attacks. Plaintiff began seeing a counselor in March, 2016 and also started to receive medications. His counselor reported in 2017 that Plaintiff's symptoms included no interest in activities, fleeting suicidal thoughts, sleep and appetite disturbances, racing thoughts, irritability, and difficulty being out in public. The counselor said Plaintiff had a moderate limitation in his ability to understand, remember, or apply information, and a marked limitation in his ability to interact with others, to maintain concentration, persistence, and pace, and to adapt or manage himself. Notes from that time indicate that Plaintiff had issues with medication compliance. Plaintiff was diagnosed with OCD in 2018. He was still having problems taking his medication regularly. He reported being overwhelmed by his anxiety and depression.

## C.  Opinion Evidence

Dr. Ippolito, a psychologist, performed a psychiatric evaluation on February 17, 2017. Plaintiff told her that he had quit his job as a bus aide due to anxiety and depression. He

reported difficulty reading and writing.  Plaintiff said he had trouble falling asleep and woke up frequently during the night.  He also reported a depressed mood, crying spells, loss of interest, irritability, anger outbursts, fatigue, low energy, and suicidal thoughts, as well as excessive apprehension, worry, and nervousness accompanied by panic attacks.  Upon examination, his affect was full and his mood was neutral.  His attention and concentration were impaired, likely due to his limited intellectual functioning, as were his recent and remote memory skills.  Plaintiff stated that he had normal relationships with friends and family members.  Dr. Ippolito thought Plaintiff was able to follow and understand simple directions and instructions and to perform both simple and complex tasks independently.  She concluded that he could maintain attention and concentration with mild limitations and both deal with stress and with others, but that his psychiatric problems might significantly interfere with his ability to function on a daily basis. (Tr. 539-43).

On the same day, Plaintiff underwent an internal medicine evaluation conducted by Dr. Dave.  He reported a history of back pain and spasms which did not respond to physical therapy. His back would lock up occasionally and he also had occasional pain radiating into his left thigh. The physical examination showed a normal gait and stance, and Plaintiff could rise from a chair without difficulty.  He had some mild limitation of motion in the lumbar spine but straight leg raising was negative.  Dr. Dave said that Plaintiff was moderately limited in his ability to accomplish repetitive or rapid changes in body positioning, to do repetitive bending and twisting through the lumbar spine, and to do heavy lifting, pushing, pulling, and carrying.  (Tr. 545-48).

A nurse practitioner, Lynn Grucza, completed a physical capacities evaluation form on May 3, 2017.  She concluded that Plaintiff could occasionally lift and carry 25 pounds, stand and walk at least two hours in a workday, sit continuously, and occasionally engage in various postural activities.  He was also limited in his ability to reach overhead and to be around hazardous machinery and heights.  (Tr. 607-10).

Dr. Dipeolu, a state agency psychologist, reviewed the records through February of 2017 and concluded that Plaintiff suffered from depressive and anxiety disorders and that he had limited cognitive ability starting at an early age.  He was moderately limited in his ability to understand detailed instructions and to maintain attention and concentration for extended periods, to work without being distracted by others, to deal with work stress, and to respond to changes in the work setting.  Another state agency reviewer, Dr. Lawrence, concluded that Plaintiff could do medium work.  (Tr. 77-90).

Finally, in a document submitted following the ALJ's decision, Nurse Practitioner Kosgei of Evergreen Health Services indicated that his practice group had been treating Plaintiff for more than two years and that Plaintiff suffered from multiple medical conditions including anxiety, depression, lumbar spondylosis, dyslexia, and spinal stenosis.  He had moderate limitations in his ability to walk, stand, sit, lift carry, and climb, and was very limited in his ability to push, pull, and bend.  Additionally, Plaintiff's psychological conditions produced moderate limitations in his ability to understand and remember instructions, make simple decisions, interact appropriately with others, and maintain appropriate behavior.  They also

rendered him very limited in his ability to maintain attention, concentration, and pace.  (Tr. 10-11).

## III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

 "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Nurse Practitioner Grucza's Opinion

Plaintiff argues, first, that the ALJ erred by rejecting certain limitations on standing and reaching which made up a portion of Nurse Grucza's opinion.  More specifically, he contends that she limited Plaintiff to two hours of standing, which is inconsistent with the ability to do light work, and to occasional reaching.  Plaintiff notes that Nurse Grucza had seen him on thirteen separate occasions prior to rendering her opinion (but only twice after Plaintiff's onset date) and that hers was the only treating source opinion in the record.  Plaintiff contends that the ALJ did not provide adequate reasons for his weighing of this opinion.  The Commissioner responds that the ALJ acted reasonably when he concluded that Plaintiff did not have the reaching limitations expressed in the opinion because those restrictions are inconsistent with the

record, which shows "limited treatment, benign clinical findings, and minimal symptoms" and because Plaintiff performed various activities of daily living showing greater capabilities. (Doc. 11, at 16-17). The Commissioner also points out that the opinion did not limit Plaintiff to two hours of standing and that the Commissioner therefore incorporated all of the other limitations expressed by Nurse Grucza.

The ALJ reasoned that Nurse Grucza's opinion was entitled to "reduced weight" because it

contains limited explanation. Moreover, it is inconsistent with the medical evidence of record showing limited overall treatment or symptoms from the claimant's degenerative disc disease of the lumbar spine [ ]. The claimant has performed activities that show a greater ability to walk and stand than in this opinion. For example, the claimant went to an amusement park and took a trip.

(Tr. 29).

Plaintiff takes issue with this reasoning process, noting that on both occasions when Plaintiff visited an amusement park, he reported increased pain afterward. While this may be true, the remainder of the ALJ's rationale - that Nurse Grucza provided only a limited explanation for her findings, and that the record shows a limited amount of treatment for Plaintiff's back condition (and little to no treatment for his arms or shoulders) - is borne out by the record. As the Commissioner correctly observes, the bulk of the treatment record relates either to other physical conditions or to Plaintiff's mental health issues. Further, Nurse Grucza did not actually limit Plaintiff to two hours of standing and walking; her opinion was that he could do at least that much, and there were other opinions in the record suggesting he could do more. Given all of these factors, the ALJ acted reasonably in finding that Plaintiff was slightly more capable, from a physical standpoint, than Nurse Grucza described him. His first claim of error therefore provides no basis for a remand.

## B. Residual Functional Capacity Finding

As his next claim of error, Plaintiff asserts that the ALJ did not have adequate support to make his physical residual functional capacity finding. He notes that the ALJ did not give much weight to Dr. Dave's opinion about Plaintiff's physical capabilities because her conclusions were vague, and also gave reduced weight to the opinion of Nurse Grucza. Nevertheless, the ALJ formulated a very specific residual functional capacity, and Plaintiff argues that he could have done so only by interpreting the raw medical data himself, something an ALJ may not do. The Commissioner argues, to the contrary, that the ALJ properly considered all of the opinion and other evidence and found that Plaintiff was actually more limited that any of these opinions indicated, which, the Commissioner asserts, could not have been prejudicial to Plaintiff's claims.

This Court has consistently held that an ALJ may not formulate a residual functional

capacity finding from bare medical evidence. *See, e.g., Dye v. Commissioner of Social Security,* 351 F. Supp. 3d 386, 390–91 (W.D.N.Y. 2019).  On the other hand, where there are competing medical opinions as to a plaintiff's abilities, an ALJ is "entitled to choose between properly submitted medical opinions and to consider other evidence of record in determining plaintiff's RFC." *Eichelberger v. Saul,* 2019 WL 4072752, *3 (W.D.N.Y. 2019).  That is what the ALJ has done here.  Although he did not give great weight to any of the various opinions, he did craft the residual functional capacity finding based on the portions of the opinions he did credit.  And, in general, the Commissioner is correct that some of the specific limitations which the ALJ imposed are more restrictive than any of the medical opinions (the important exception being the reaching limitation).  As this Court has also said,  "[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand." *Yargeau v. Berryhill,* 2018 WL 1335388, *3 (W.D.N.Y. 2018) (emphasis in original). Consequently, this second claim of error also provides no basis for a remand.

### C.  The Appeals Council's Rejection of Mr. Kosgei's Opinion

Plaintiff's final claim of error focuses on the way in which the Appeals Council dealt with the opinion submitted after the ALJ issued his decision.  He argues that the opinion was both new and material and that good cause existed for its being submitted after the ALJ's decision.  However, the Appeals Council declined to consider it because it was dated after that decision as well and therefore did not relate to the relevant time frame (that is, the period between the alleged onset date and the date of the ALJ's decision).  Plaintiff contends that the opinion relates back to that time period because it was based on conditions from which the Plaintiff suffered during that time and, consequently, the Appeals Council relied on an incorrect reason for refusing to consider it.  The Commissioner counters that this opinion did not, in fact, relate to the relevant time period because Nurse Kosgei did not treat Plaintiff for any of the conditions listed in his report until after the ALJ's decision, and even if it did, it was not material because it would not have changed the ALJ's decision.

As the Appeals Council indicated in its decision, new evidence must not only relate to the relevant time period, but the claimant "must show that there is a reasonable probability that the additional evidence would change the outcome of the decision."  (Tr. 1).  That is a correct recitation of the regulatory standard, *see* 20 C.F.R § 416.1470(a)(5).  The Court agrees with the Commissioner that this evidence does not satisfy the applicable standard.  The form submitted did not provide any detailed explanation for the limitations expressed which might have persuaded the ALJ to rethink his determination, which was, as noted above, based on a consideration of the entire record and of multiple medical opinions.  Also, Nurse Kosgei did not treat Plaintiff for his mental health issues, although many of the restrictions contained in his opinion are based on those conditions.  And the record shows only minimal contact between Nurse Kosgei and Plaintiff during the relevant time period.  Most of the treatment notes are signed by Nurse Grucza, and those signed by Nurse Kosgei during the relevant time frame do not relate to any condition for which he claims disability.  Given these factors, there is no reasonable probability that this document would have altered the result reached by the ALJ.  The regulatory standard governing this evidence has therefore not been met, and this claim likewise does not

support a remand order.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**